IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NATALIE PACHECO,<br><br>　　　Plaintiff,<br><br> vs.<br><br>CAROLYN W. COLVIN<br>**Acting Commissioner of Social Security,**<br><br>　　　Defendant. | REPORT & RECOMMENDATION<br><br>Case No. 2:13-CV-00197-DN-DBP<br><br>District Court Judge David Nuffer<br><br>Magistrate Judge Dustin B. Pead |

　　　This matter was referred to Magistrate Judge Dustin B. Pead pursuant to 28 U.S.C. § 636(b)(1)(B). Currently pending before this Court is Plaintiff's appeal of the Acting Commissioner's (Commissioner's) decision denying her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-33, 1381-1383f. Having considered the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the Court recommends that the administrative law judge's (ALJ's) decision be AFFIRMED.

## PROCEDURAL HISTORY

　　　On June 14, 2010, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning January 12, 2010[1] (Tr. 37, 133-40). An ALJ denied Plaintiff's claims on February 9, 2012 (Tr. 13-29), and the Appeals Council declined Plaintiff's request for review (Tr. 1-6), making the ALJ's decision the final administrative decision for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481, 422.210(a).[2] This appeal followed.

---

[1] Plaintiff originally asserted that she became disabled in August 2009 (Tr. 133). However, Plaintiff (through counsel) later amended the date of alleged disability onset to January 12, 2010 (Tr. 37).

[2] All citations to the Code of Federal Regulations (C.F.R.) are to the 2013 edition. Unless otherwise noted, subsequent citations to the C.F.R. are to part 404, which addresses DIB, and have parallel citations in part 416, which addresses SSI.

# STATEMENT OF RELEVANT LAW

## I. Definition of disability under the Act

The Act states that an individual "shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

## II. Process for determining disability under the Act

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process. That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met or medically equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4). If a decision regarding the claimant's disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. 20 C.F.R. § 404.1520(a)(4).

## III. Standard of review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation and citation omitted). The Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Id.* Where the evidence as a whole can support either the agency's decision or an award of benefits, the court must affirm the agency's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## DISCUSSION

**I.  Substantial evidence supports the ALJ's finding that Plaintiff had the residual functional capacity to do a reduced range of unskilled sedentary work.**

The ALJ found that Plaintiff had a number of limitations, but that her complaints of disabling limitations were contradicted by the medical evidence of record, gaps in treatment, and her significant activities. Ultimately, the ALJ found that Plaintiff was limited to a reduced range of unskilled sedentary work (Tr. 20-21), and that, although she could not do her past work (Tr. 27), she was not disabled because she could perform other (unskilled sedentary) jobs that exist in significant numbers in the national economy (Tr. 27-28). Plaintiff asserts that the ALJ erred in evaluating her subjective statements and the medical source opinions of record, and that the ALJ made procedural and factual errors. While the Court sympathizes with Plaintiff's arguments, they are ultimately unpersuasive under substantial evidence review.

**A.  The ALJ reasonably evaluated Plaintiff's testimony.**

In evaluating Plaintiff's testimony regarding disabling physical limitations, the ALJ noted contradictions between Plaintiff's allegations of disabling limitations and the objective medical record. For instance, although imaging showed degenerative changes in Plaintiff's lumbar spine, doctors' examinations revealed generally normal physical functioning, including normal neurological, motor, deep tendon, coordination, sensory, and gait and station testing (Tr. 22-23; *see, e.g.*, Tr. 298, 373, 464, 476). And an examination showed four out of five positive Waddell signs,[3] suggesting symptom exaggeration (Tr. 22; *see* Tr. 373). These contradictions support a finding that Plaintiff's symptoms were not as limiting as she claimed. 20 C.F.R. §§ 404.1529(c)(2) (evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption is a useful indicator of the intensity and persistence of a claimant's symptoms), 404.1529(c)(4) (inconsistencies); *Wall*, 561 F.3d at 1056 n.10 (three or more Waddell signs are

---

[3] Waddell signs may indicate the presence of secondary gain and malingering. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 419-20 (6th Cir. 2008). Three or more Waddell signs are deemed clinically significant. *Wall v. Astrue*, 561 F.3d 1048, 1056 n.10 (10th Cir. 2009).

deemed clinically significant); *Jordan,* 548 F.3d at 419-20 (Waddell signs are "a clinical test for patients with low back pain that can be used to indicate whether the patient is exaggerating symptoms"); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (consistency of testimony with the medical record).

The ALJ also noted evidence that Plaintiff's symptoms improved with conservative treatment (Tr. 22; *see, e.g.*, Tr. 345-46, 352, 354, 363). Indeed, Plaintiff admitted that medication allowed her to function and to "do those things she needs to do" (Tr. 340). Specifically, Plaintiff was able to care for her autistic son, attend church, do some housework and laundry, and shop for groceries (Tr. 19, 22, 24; *see* Tr. 39-42, 177-79, 355, 379). The ALJ reasonably found that, while Plaintiff at times reported increased symptoms, these exacerbations were often associated with increased activity such as getting down on the floor to work with her autistic son or packing household items to move (Tr. 25; *see, e.g.*, Tr. 344, 412-13). Notably, Plaintiff herself admitted that she could lift at least 10 pounds and sit or stand for about 15 minutes at a time, which is consistent with the ALJ's finding that she had the residual functional capacity to do a reduced range of sedentary work (*compare* Tr. 20-21 *with* Tr. 181, 410). 20 C.F.R. §§ 404.1529(c)(3)(i) (claimant's activities), 404.1529(c)(3)(iv) (effectiveness of treatment); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (a claimant's activities may be considered, along with other evidence, in evaluating the claimant's functional abilities); *Id.* ("Disability requires more than the mere ability to work without pain." (quotation, citation, and punctuation omitted)).

With regard to Plaintiff's mental functioning, the ALJ observed that Plaintiff's allegations of disabling mental limitations were contradicted by evidence that Plaintiff's mental health symptoms responded to conservative treatment (namely outpatient therapy and medication) (Tr. 23; *see, e.g.*, Tr. 340, 410, 413). Also relevant to the ALJ, Plaintiff consistently received global assessment of functioning (GAF)[4] ratings of 55 (indicating only moderate

---

[4] GAF ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. A GAF rating of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32-34 (Text Revision 4th ed. 2000). *(Continued)*

symptoms), including from her mental health care providers at Clinical Consultants in early 2010, from examining psychologist Dr. Swaner in late 2010, and from her mental health care providers at Webster Health Services in late 2011 (Tr. 23-24; *see* Tr. 267, 383, 452). And despite her allegations of extreme limitations in mental functioning, Plaintiff read, cared for her young autistic son and helped him with homework, used the internet, shopped for groceries, and drove (Tr. 22; *see* Tr. 38-42, 44, 179-80, 340, 410). This evidence supports a finding that Plaintiff had greater mental functioning than she claimed. 20 C.F.R. §§ 404.1529(c)(3)(i) (activities), 404.1529(c)(iv) (effectiveness of treatment), 404.1529(c)(4) (inconsistencies); *Knight v. Astrue*, 388 F. App'x 768, 773 (10th Cir. 2010) (unpublished) (GAF score of 56, indicating moderate symptoms, was inconsistent with the claimant's allegations of extremely severe mental restrictions); *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005) (claimant's mental impairments, while present to some degree, were "fairly well controlled" with medication); *Huston*, 838 F.2d at 1132 (consistency of testimony with the medical record); *Gossett*, 862 F.2d at 807 (activities).

The ALJ also noted that Plaintiff had more than a year-long gap in therapy between mid-2010 and mid-2011 (Tr. 23, 24).[5] And the ALJ correctly observed that, during this gap in therapy, the agency sent Plaintiff to a psychological examination at which Plaintiff exhibited generally normal mental functioning, including normal attention and concentration and intact memory (Tr. 23; *see* Tr. 381-82). Indeed, reviewing state agency psychologist Dr. Huebner opined that the medical record did not show a deterioration in Plaintiff's mental functioning

---

[5] The ALJ mistakenly stated that Plaintiff ceased therapy at Clinical Consultants in May 2010, not July 2010 (Tr. 23). This error regarding the dates of Plaintiff's treatment does not warrant remand. *Cf. Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (finding "a mere scrivener's error" harmless where an ALJ mistakenly wrote that surgeries took place in 2004 instead of 2005). With regard to Plaintiff's related argument that the ALJ omitted a mental health care appointment in November 2011, the evidence in question is confusing because it reflects dates from both September 2011 and November 2011 (Tr. 446-52). However, it is clear that the ALJ considered this evidence because he cited it in its decision (Tr. 23 (citing Exhibit 16F), 24 (citing Exhibit 16F at pages 33, 5-8)). Even if the ALJ was mistaken as to the precise date of Plaintiff's visit(s), substantial evidence supports the ALJ's general finding that Plaintiff retained intact mental functioning even during periods when she was not attending therapy (Tr. 23-24). *Poppa*, 569 F.3d at 1172 n.5.

through late 2010 (Tr. 26-27; *see* Tr. 437). The ALJ reasonably found that Plaintiff's limited mental health treatment undermined her complaints of disabling mental limitations. *Luna v. Bowen,* 834 F.2d 161, 165-66 (10th Cir. 1987) (regular medical treatment is a factor to consider in evaluating credibility); *see also Molina v. Astrue,* 674 F.3d 1104, 1113-14 (9th Cir. 2012) (ALJ reasonably considered claimant's failure to seek or follow prescribed treatment; the record did not contain any medical evidence that the claimant's resistance to treatment was attributable to her mental impairment rather than her own personal preference).

Plaintiff argues that the ALJ made only a generalized credibility finding. However, the Tenth Circuit has recognized that an ALJ's use of boilerplate language is only problematic where it appears in the absence of a more thorough analysis. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012). Here, the ALJ did not rely solely on boilerplate language and instead provided a more thorough analysis, linking his credibility finding to substantial evidence in the record. Moreover, the ALJ explicitly discussed a number of the credibility factors highlighted in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), including attempts to find relief, regular medical treatment, daily activities, and the effectiveness of treatment (Tr. 25). *Id*. at 165-66; *cf*. *Keyes-Zachary*, 695 F.3d at 1167 (ALJ was not required to make a formalistic, factor-by-factor recitation of the evidence).

Plaintiff argues that, in evaluating the medical evidence, the ALJ "ignored" November 2009 and November 2011 lumbar MRIs. However, the ALJ acknowledged and discussed this evidence (Tr. 22-23). The Court notes that, when orthopedic specialist Dr. Matich reviewed the November 2009 MRI, she found that it showed a herniated disc, but that "this does not significantly impinge on [the] L5 nerve root and not on [the] S1 nerve root" (373). Dr. Matich also noted four out of five positive Waddell signs, suggesting symptom exaggeration (Tr. 22; *see* Tr. 373). And while the November 2011 MRI showed a herniated disc, no spinal cord or nerve root impingement was noted (Tr. 22-23; *see* Tr. 471-72). Plaintiff's argument asks the Court to reweigh the evidence, which it cannot do under substantial evidence review. *Lax*, 489 F.3d at 1084.

Plaintiff also asserts that the ALJ erred in evaluating GAF ratings assigned by Dr. Swaner and by other care providers. However, Social Security regulations do not specifically address GAF ratings. Nor does the Federal Register language cited by Plaintiff preclude ALJs from considering GAF ratings. Instead, it clarifies the relationship between GAF ratings and the severity requirements set forth in the mental impairment listings (considered at step three of the sequential evaluation), and states that the GAF scale does not have a direct correlation to these listings. 65 Fed. Reg. 50,746, 50,764-65 (2000) (final rules). But a GAF rating is a snapshot of a person's mental functioning at a particular time; hence, it can be relevant to the residual functional capacity assessment. *See, e.g.*, *Knight*, 388 F. App'x at 773. This is especially true here, where several GAF scores at several different points in time consistently indicated that Plaintiff had only moderate functional limitations.

Because the ALJ's credibility finding was supported by substantial evidence, the Court recommends that the ALJ's decision be affirmed.

**B.     The ALJ reasonably evaluated the medical source opinions of record.**

No doctor or other acceptable medical source opined that Plaintiff had physical limitations beyond those found by the ALJ (Tr. 25). While advanced practice registered nurse Rebecca Cate twice opined that Plaintiff was "unable to work" due to her back impairment (Tr. 339, 470), these opinions did not identify specific functional limitations, and instead addressed the ultimate issue of disability, which is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1)-(3); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

Nevertheless, the ALJ considered Ms. Cate's opinions using several factors for evaluating opinions from non-acceptable medical sources (Tr. 26). The ALJ reasonably found that Ms. Cate's opinions were not supported by her own notes, and were not consistent with examinations made by other medical professionals (discussed earlier in the ALJ's decision) showing that Plaintiff retained generally normal physical functioning (Tr. 26). SSR 06-03p, 2006 WL 2329939, at *4-5 (ALJ must consider support for non-acceptable medical source opinion and consistency with other evidence). Notably, at the time of Ms. Cate's July 2010

opinion that Plaintiff was "unable to work," her most recent treatment notes indicated that Plaintiff could lift 10 to 15 pounds and would require frequent position changes with frequent sitting or standing (*compare* Tr. 339 *with* Tr. 345). These limitations suggest greater functioning than opined by Ms. Cate, and are consistent with the ALJ's physical residual functional capacity finding.

Although the ALJ could have been more explicit in his analysis, his findings are grounded in substantial evidence and are sufficiently specific for the Court's review. *Keyes-Zachary*, 695 F.3d at 1164-65 (ALJ's evaluation of an "other medical source" opinion need only be sufficiently specific to permit the court to follow the ALJ's reasoning); *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) (where ALJ set forth a summary of the relevant medical evidence earlier in his decision, he was not required to recite the same evidence again in discounting opinion).

In assessing Plaintiff's physical and mental functioning, the ALJ considered the opinions of state agency physicians Dr. Burkett and Dr. Peterson and state agency psychologists Dr. Sullivan and Dr. Huebner, and afforded them "the weight of expert medical opinions" (Tr. 26). 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider). Plaintiff asserts that the ALJ should have further explained the weight given to the opinions of reviewing state agency consultants' opinions. However, it is clear from the face of the ALJ's decision that the ALJ assigned weight to the opinions. And, to the extent that the ALJ gave Plaintiff the benefit of the doubt and found that she had greater restrictions than opined by the state agency consultants, the ALJ's finding inured to Plaintiff's benefit. *Keyes-Zachary*, 695 F.3d at 1163, 1165 (any error by the ALJ in failing to specify the weight given to psychologists' opinions was harmless where the limitations assigned by the psychologists were generally consistent with the limitations found by the ALJ); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible

error by electing to temper its extremes for the claimant's benefit"); *see also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (the ALJ, not a physician, is charged with determining a claimant's residual functional capacity).

Plaintiff further argues that the state agency psychologists' opinions that Plaintiff would improve by late 2010 were not borne out by the record. However, as discussed, an October 2010 psychological examination showed that, even during a period in which Plaintiff was not participating in therapy, she had generally normal mental functioning (including normal attention and concentration and intact memory) (Tr. 23; *see* Tr. 381-82). State agency psychologist Dr. Huebner found that the updated medical record did not show a deterioration in Plaintiff's mental functioning through late 2010 (Tr. 26-27; *see* Tr. 437). And Plaintiff consistently received GAF ratings of 55 (indicating only moderate symptoms), including from her mental health care providers at Clinical Consultants in early 2010, from examining psychologist Dr. Swaner in late 2010, and from her mental health care providers at Webster Health Services in late 2011 (Tr. 23-24; *see* Tr. 267, 383, 452). Regardless of whether the Court would make the same finding in the first instance, the Court must affirm the ALJ's decision where, as here, it is supported by substantial evidence in the record. *Lax*, 489 F.3d at 1084.

Finally, Plaintiff argues that the ALJ should have consulted a medical expert regarding medical evidence submitted after the state agency psychologists completed their reviews. However, ALJs have broad discretion to decide whether to call a medical expert. 20 C.F.R. § 404.1527(e)(2)(iii) (providing that an ALJ *may* ask for and consider medical expert testimony); *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *3 (10th Cir. June 28, 2007) (unpublished) (ALJs have "broad latitude" in seeking opinions of medical experts). Here, the ALJ had Plaintiff's treatment records, evidence of her daily activities, a consultative psychological examination, and reports from the reviewing state agency psychologists. Given the breadth and

depth of the evidence, the ALJ reasonably exercised his discretion not to call a medical expert (Tr. 26-27).[6] 20 C.F.R. § 404.1527(e)(2)(iii); *Simien*, 2007 WL 1847205, at *3.

Because the ALJ's findings regarding the medical source opinions were supported by substantial evidence, the Court recommends that the ALJ's decision be affirmed.

### C. The ALJ reasonably assessed Plaintiff's residual functional capacity.

Plaintiff argues that the ALJ failed to account for limitations in mental functioning due to an anxiety disorder, pain disorder, and personality disorder. However, during the administrative proceedings, Plaintiff did not allege disability due to a pain disorder or personality disorder (Tr. 215). *Branum*, 385 F.3d at 1271 ("where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored" (quotation and citation omitted)). In any event, although reviewing state agency psychologist Dr. Sullivan diagnosed a personality disorder, she opined that Plaintiff did not have long-term limitations in mental functioning (Tr. 387). And although examining psychologist Dr. Swaner diagnosed a pain disorder (Tr. 383), he did not identify mental limitations beyond those found by the ALJ. The ALJ addressed Plaintiff's assertions regarding a disabling anxiety disorder when he found that adjustment disorder was a severe impairment, citing Dr. Swaner's diagnosis of adjustment disorder with mixed anxiety and depressive mood (Tr. 18 (citing Exhibit 6F, page 9); *see* Tr. 383). And the ALJ explicitly considered this diagnosis and Plaintiff's

---

[6] The Court rejects Plaintiff's related argument that, at step three of the sequential evaluation, the ALJ erred in evaluating whether she medically equaled a listing. The ALJ explicitly discussed the requirements of Listing 12.04, and reasonably found that Plaintiff did not medically equal the listing (Tr. 19-20). During the administrative proceedings, Plaintiff (through counsel) did not ask the ALJ to consider Listings 12.06, 12.07, and 12.08 (Tr. 223). *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored" (quotation and citation omitted)). Further, Plaintiff has not shown medical findings equal in severity to all of the criteria for the listings, as required to establish medical equivalence. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (in order to establish that an impairment or combination of impairments medically equaled a listing, a claimant must present medical findings equal in severity for all the criteria for the most similar listed impairment).

complaints regarding anxiety disorder in assessing her mental residual functional capacity (Tr. 23). Given the constraints of substantial evidence review, the Court must reject Plaintiff's argument that she had limitations in mental functioning beyond those found by the ALJ.

Plaintiff asserts that the ALJ failed to account for limitations resulting from a hip impairment. Again, however, Plaintiff did not allege disability due to a hip impairment during the administrative proceedings (Tr. 215). *Branum*, 385 F.3d at 1271. Furthermore, Plaintiff has not met her burden to show that "mild early degenerative change" shown in the November 2009 MRI created limitations in physical functioning beyond those found by the ALJ (Tr. 288).

Although Plaintiff argues that the ALJ found "the least" she could do, not "the most," such a concession would only benefit Plaintiff. *See* SSR 96-8p, 1996 WL 374184, at *4 (if an ALJ expresses a residual functional capacity finding in terms of the lowest exertional level (*e.g.*, sedentary work when the claimant can perform medium work), the ALJ will "concede lesser functional abilities than the individual actually possesses"). Here, the ALJ found that Plaintiff had the residual functional capacity to do "at least" a range of unskilled sedentary work (Tr. 20). In other words, the ALJ gave Plaintiff the benefit of the doubt in finding that she was limited to unskilled sedentary work. The ALJ then presented the limitations identified in his residual functional capacity finding to the vocational expert,[7] and relied on the expert's testimony to find that an individual with these limitations could do work that exists in significant numbers in the national economy (Tr. 27-28, 65-66). Plaintiff cannot show that a less stringent residual functional capacity finding would have led to a more favorable result.

Finally, Plaintiff argues that the ALJ's inclusion of level 3 General Educational Development (GED) reasoning within the definition of simple work is inconsistent with the Tenth Circuit's decision in *Hackett v. Barnhart*, 395 1168, 1176 (10th Cir. 2005). However, GED embraces those aspects of education (formal and informal) which are required of the

---

[7] Plaintiff asserts that the ALJ's hypothetical to the vocational expert did not include any limitation in the ability to respond appropriately to supervisors. However, the ALJ did not find any limitation in this area (Tr. 21 ("still having the ability to respond appropriately to supervision, co-workers, and typical work situations")).

worker for satisfactory job performance. DOT, App. C, § III, 1991 WL 688702. Residual functional capacity, on the other hand, represents the most a claimant can do despite the physical and/or mental limitations caused by her medical impairments and does not incorporate educational background. 20 C.F.R. §§ 404.1545(a) and (c), 404.1560(c). In *Hackett*, the Tenth Circuit found that a limitation to "simple and routine work tasks" seemed inconsistent with the demands of level 3 reasoning. *Id.* at 1176. The Tenth Circuit remanded the case so that the ALJ could address the "apparent conflict." *Id.* The Tenth Circuit did not discuss the claimant's education level. *Id.* In other words, although the Tenth Circuit perceived an "apparent conflict" between the claimant's GED levels and the ALJ's residual functional capacity finding, the Tenth Circuit did not consider whether the "conflict" might be explained by the fact that GED describes general educational background, rather than the specific mental or skill requirements of a particular job. However, in recent unpublished decisions, the Tenth Circuit has recognized that GED levels describe general educational background, not specific mental or skill requirements. *Anderson v. Colvin,* 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished); *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) (unpublished).

Here, the ALJ correctly observed that Plaintiff had at least a high school education (Tr. 27, 161). Under Social Security regulations, Plaintiff's particular educational background means that she has "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above," and the agency will "generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. § 404.1564(b)(4). There is no dispute that Plaintiff had the educational background to perform the unskilled jobs identified by the vocational expert and relied on by the ALJ (Tr. 28, 66-67).

In any event, two of the unskilled jobs relied on by the ALJ had GED reasoning levels of 2 (Tr. 27-28). *See* Addresser, *Dictionary of Occupational Titles* (*DOT*) 209.587-010, 1991 WL 671797; Ampoule Sealer, *DOT* 559.687-014, 1991 WL 683782. Thus, any alleged error did not affect the outcome of the case. *Anderson*, 514 F. App'x at 764 (even assuming that there was a conflict between level 3 GED reasoning and unskilled work, any error would be harmless because two of the jobs relied on by the ALJ had a GED reasoning level of 1); *see also*

12

*Hackett*, 395 F.3d at 1176 (level 2 GED reasoning is consistent with a restriction to simple tasks).

Having determined that the Commissioner's final decision is supported by substantial evidence in the record and free from reversible legal error, the Court recommends that the Commissioner's decision be AFFIRMED.

**Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED to the District Court that:

1. The ALJ's initial determination and the Commissioner's final determination that Plaintiff should be denied DIB and SSI should be AFFIRMED.

Copies of the foregoing report and recommendation are being mailed to all parties who are hereby notified of their right to object. Any objection must be filed within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Failure to object may constitute a waiver of objections upon subsequent review.

Dated this  13th  day of February, 2014.

DUSTIN B. PEAD
UNITED STATES MAGISTRATE JUDGE